**SO ORDERED.**

**SIGNED this 10th day of January, 2013.**



Janice Miller Karlin
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br>Neil Matthew Jacobson,<br><br>      Debtor. | Case No. 12-40075<br>Chapter 7 |
| Brett Bartley and<br>Patricia Bartley,<br><br>      Plaintiffs,<br>v.<br><br>Neil Matthew Jacobson,<br><br>      Defendant. | Case No. 12-7018<br>Adversary Proceeding |

**Memorandum Opinion and Order Granting
Plaintiffs' Motion for Summary Judgment**

Plaintiffs Brett and Patricia Bartley, creditors of Debtor Neil Jacobson, seek a determination that $33,704.50 of debts owed to them by Jacobson are nondischargeable under the exceptions to discharge found in 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6). The

Plaintiffs' motion for summary judgment is granted, because the uncontroverted facts show that the debt at issue is: (1) for money obtained by false pretenses, a false representation, or actual fraud; and (2) for willful and malicious injury by the debtor to the property of the Plaintiffs.

This matter constitutes a core proceeding over which the Court has the jurisdiction and authority to enter a final order.[1]

I.   **Findings of Fact**

In May 2008, Plaintiffs entered into a contract with Eichus Building Management, Inc. ("Eichus Building"), for construction of a home in Douglas County, Kansas. Jacobson, on behalf of Eichus Building, offered to provide labor and supply materials for the construction of the home on a cost plus ten percent profit basis, as long as the maximum cost did not exceed $759,220. Jacobson agreed to submit payment invoices for work performed and materials supplied by Eichus Building, and Plaintiffs would pay the submitted invoices plus the ten percent profit.

In April 2009, Jacobson submitted invoice number 453 to Plaintiffs for the material and labor provided to install the roof on the property by a subcontractor, Mesler Roofing, Siding, and Windows (the "Mesler Roofing invoice"). The Mesler Roofing invoice submitted by Jacobson to Plaintiffs shows that $20,995 was due for the work. Plaintiffs requested the receipts that formed the basis for the amounts billed,

---

[1] *See* 28 U.S.C. § 157(b)(2)(I) (stating that "determinations as to the dischargeability of particular debts" are core proceedings); § 157(b)(1) (granting authority to bankruptcy judges to hear core proceedings).

-2-

Case 12-07018   Doc# 39   Filed 01/10/13   Page 2 of 15

and Jacobson provided a proposal/contract from Mesler Roofing which purported to show that the amount owed was, in fact, $20,995. The original amount estimated for roofing was $29,000 based on a metal roof; however, Plaintiffs decided against having a metal roof to reduce costs, so they assumed the $20,995 shown in the invoice was reasonable based on the reduction in costs of roofing. Plaintiffs relied on the Mesler Roofing invoice provided by Jacobson to state the accurate amount due, and paid Eichus Building $23,094.50 on April 16, 2009 ($20,995 costs plus $2,099.50 ten percent profit).

Four months later, in August 2009, a dispute arose about the quality of work performed by Mesler Roofing. As a result, Plaintiffs called Mesler Roofing and found out that the subcontractor's cost was actually less than what Jacobson had represented to Plaintiffs. The actual proposal/contract from Mesler Roofing to Eichus Building was only $12,995, and the final billed invoice on March 2, 2009, from Mesler Roofing to Eichus Building was $13,500. Mesler Roofing received payment from Eichus Building on April 21, 2009 for $12,995, and on July 10, 2009 for the remainder $505.

Before delivering the Mesler Roofing invoice to Plaintiffs, Jacobson intentionally altered the amount so that it appeared to be $20,995, rather than $12,995. Jacobson knew the amount stated in the Mesler Roofing invoice to Plaintiffs was false. For the work performed by Mesler Roofing, Plaintiffs only owed $14,850 ($13,500 cost plus $1350 ten percent profit), rather than the $23,094.50 actually paid. The Plaintiffs, therefore, overpaid for the Mesler Roofing invoice by $8244.50.

Part of the work on the property also included framing work by Complete

Construction, LLC ("Complete Construction"). Plaintiffs paid three invoices from Eichus Building based on the Complete Construction framing: (1) invoice number 418, in November 2008, for $40,000; (2) invoice number 430, in December 2008, for $27,000 in framing and $7605.12 in materials; and (3) invoice number 431, in February 2009, for $4240. Plaintiffs relied on the Complete Construction invoices provided by Jacobson to state the accurate amount due, and paid Eichus Building a total of $86,729.63 for framing ($78,845.12 costs plus $7884.51 ten percent profit). In July 2009, Jacobson provided invoices and receipts to Plaintiffs to support the Eichus Building invoices to Plaintiffs, allegedly showing how much Eichus Building had paid Complete Construction for framing work.

Plaintiffs discovered, however, that the total amount actually owed from Eichus Building to Complete Construction was only $61,470.12, as reflected in the true invoices from Complete Construction.[2] Eichus Building only paid Complete Construction this lesser $61,470.12 amount. As a result, the amount actually owed by Plaintiffs to Jacobson for framing was $67,617.13 ($61,470.12 cost plus $3147.01 ten percent profit). When Jacobson presented the invoices to be paid by Plaintiffs, he knew that the amounts stated to be due were false. The Plaintiffs, therefore, overpaid for the Complete Construction invoices by $19,112.50.

An additional portion of work on the property was for Eichus Building to provide

---

[2] Plaintiffs also discovered, in August 2009, that Jacobson included in his invoices to Plaintiffs a bill from Complete Construction for $5000 that Complete Construction informed Jacobson was a mistaken bill that should not be paid.

-4-

sixty corbels[3] for the home to Plaintiffs. Plaintiffs were required to pay for the sixty corbels in advance, for a fee of $14,700. For construction of the corbels, Jacobson provided Plaintiffs with invoice number 432, requesting payment of $14,700 for labor and materials for the corbels. In reliance upon invoice 432 and Eichus Building's agreement to provide sixty corbels to Plaintiffs, Plaintiffs paid Eichus Building the $14,700 on February 14, 2009. Despite receipt of the $14,700, Jacobson only provided twenty-seven corbels to Plaintiffs, and failed to provide the remaining thirty-three corbels. Plaintiffs requested several times that Jacobson deliver the remaining corbels to them, but Jacobson refused. Out of frustration with the clams made by the Plaintiffs, Jacobson admitted that he destroyed the thirty-three corbels by burning them in a fire. The value of the destroyed corbels is $8085.

In late 2009, Plaintiffs filed a lawsuit against Jacobson and Eichus Building in the District Court of Douglas County, Kansas. Neither Jacobson nor Eichus Building responded to the lawsuit, and Plaintiffs obtained a default judgment against both on January 25, 2010. No payments have been made toward the judgment. On January 25, 2012, Jacobson filed a chapter 7 bankruptcy petition. Plaintiffs' adversary proceeding asks the Court to determine that portions of the state court judgment are nondischargeable.

---

[3] Corbels are decorative brackets that are placed under the eaves of homes. The corbels Plaintiffs hired Jacobson to build were custom made and designed only for Plaintiffs' home.

-5-

Case 12-07018    Doc# 39    Filed 01/10/13    Page 5 of 15

## II. Analysis

### A. Standards for Motions for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is no "genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[4] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[5] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[7]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8] If the movant carries this initial burden, the nonmovant must "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[9] To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript,

---

[4] Fed. R. Civ. P. 56(a). Rule 56 is applicable to bankruptcy adversary proceedings via Federal Rule of Bankruptcy Procedure 7056.

[5] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Id.* (citing *Anderson*, 477 U.S. at 248).

[8] *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9] *Id.* (citing Federal Rule of Civil Procedure 56).

or a specific exhibit incorporated therein."[10]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[11]

### B. The Debtor's Response to Plaintiffs' Motion for Summary Judgment

Under the rules of practice governing motions for summary judgment, Jacobson's response to Plaintiffs' motion is deficient. Jacobson's response, a letter to the Court with no supporting citations or reference to the record, begins with a broad denial of any attempt on his behalf to defraud Plaintiffs. Jacobson then states that he adjusted one invoice simply to "maintain the peace" regarding other line items coming due that were not spelled out in the parties' contract.[12] Other billing complaints Jacobson explains as "errors," and, regarding the corbels, he claims the Plaintiffs "received the preponderance of what they paid for."[13] Regarding the state court judgment against him, Jacobson states that, although he "no doubt" received the legal documents referred to by Plaintiffs, he has "no recollection" of them and explains that, during that period of his life, he "found it easier to ignore things, rather than deal with

---

[10] *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002) (internal quotations omitted).

[11] *Celotex Corp.*, 477 U. S. at 327

[12] Doc. 36 at 1.

[13] *Id.* at 1–2.

-7-

them."[14]

As required by Rule 56 of the Federal Rules of Civil Procedure, a party asserting that a fact is disputed must support that assertion by citations to the record or by showing that the materials cited by the movant do not support the fact.[15] Jacobson has not complied with this requirement: his "response" is not supported by citations to the record and does not challenge any of Plaintiffs' evidence. As a result, the court is permitted by Rule 56 to "consider the fact[s] undisputed for purposes of the motion"[16] and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[17]

In addition, the same result is required by District of Kansas Local Bankruptcy Rule 7056.1. Rule 7056.1(d) requires that the allegations in Jacobson's response "be presented by affidavit, declaration under penalty of perjury, and/or through the use of relevant portions of pleadings, depositions, answer to interrogatories, and responses to requests for admissions." Rule 7056.1(a) states that the "court will deem admitted for the purpose of summary judgment, all material facts contained in the statement of the movant unless the statement of the opposing party specifically controverts those facts." Jacobson failed to support his allegations with any record citation or affidavit,

---

[14] *Id.* at 2.

[15] Fed. R. Civ. P. 56(c); *see also Diaz*, 289 F.3d at 674 ("[T]he non-movant must either establish the existence of a triable issue of fact under Fed. R. Civ. P. 56[(c)] or explain why he cannot . . . under Rule 56[(d)].").

[16] Fed. R. Civ. P. 56(e)(2).

[17] Fed. R. Civ. P. 56(e)(3).

and failed to controvert Plaintiffs' statements of uncontroverted facts. Jacobson's response is wholly inadequate under Rule 7056.1.

Jacobson's pro se status does not relieve him of his responsibility to follow these procedural requirements.[18] Under the above-addressed Rules, the Court will deem admitted Plaintiffs' uncontroverted statements of fact for the purpose of assessing the motion for summary judgment.

### C. Nondischargeability under 11 U.S.C. § 523(a)(2)(A)

Subsection 523(a)(2)(A) of title 11, the basis for Plaintiffs' dischargeability claim as to the $8,244.50 overpayment for the Mesler Roofing invoice and the $19,112.50 overpayment for the Complete Construction invoices, provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt– –
> . . .
> (2) for money, property, services . . . to the extent obtained by– –
>
> (A) false pretenses, a false representation, or actual fraud[.]

Under this subsection, the analysis begins "with the recognition that exceptions to discharge are narrowly construed, and because of the fresh start objectives of bankruptcy, doubt as to the meaning and breadth of a statutory exception is to be resolved in the debtor's favor."[19]

---

[18] *See, e.g.*, *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 540 (10th Cir. 2005) ("Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (internal quotations and alterations omitted)).

[19] *DSC Nat'l Properties, LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (10th Cir. BAP 2012) (internal quotations and alterations omitted).

To except debt from discharge based on a false representation, a creditor must prove the following factors by a preponderance of the evidence: (1) the debtor made a false representation; (2) the debtor made the representation with the intent to defraud; (3) the creditor relied on the representation; (4) the creditor's reliance was justifiable; and (5) the debtor's representation caused the creditor to sustain a loss.[20] Under this subsection, the "debtor must have acted with the *subjective intent* to deceive the creditor."[21] Intent to deceive a creditor may be inferred from the totality of circumstances, or "from a knowingly made false statement."[22] Whether a creditor's reliance is justifiable is also measured "from a subjective standpoint."[23] To determine whether reliance is justifiable, a court should "examine the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case."[24]

Here, the uncontroverted facts show that Plaintiffs have established nondischargeability under § 523(a)(2)(A) by a preponderance of the evidence. First, Jacobson made a false representation to Plaintiffs when he submitted an invoice to them for $20,995 for Mesler Roofing services, when the billed invoice from Mesler Roofing to Eichus Building was only $13,500. Jacobson's second false representation

---

[20] *Id.* at 169.

[21] *Id.*

[22] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1375 (10th Cir. 1996).

[23] *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 791 (10th Cir. 2009).

[24] *Id.* at 792.

-10-

to Plaintiffs occurred when he submitted invoices to Plaintiffs for $78,845.12 for the Complete Construction services, when the billed invoices from Complete Construction were only $61,470.12. Both of these representations by Jacobson to Plaintiffs constituted a "knowingly made false statement:"[25] they were knowingly untrue invoices submitted for payment by Jacobson to Plaintiffs.

Second, Jacobson made these false representations with the intent to defraud. The uncontroverted facts show that both sets of invoices were false representations of actual cost and were knowingly made false statements. At the time Jacobson submitted the Mesler Roofing invoice to Plaintiffs, he knew that the balance due was only $13,500, not the $20,995 he falsely represented to Plaintiffs. Before delivering the Mesler Roofing invoice to Plaintiffs, Jacobson intentionally altered the amount so that it appeared to be $20,995, rather than $12,995. At the time Jacobson submitted the Complete Construction invoices to Plaintiffs, he similarly knew that he was submitting invoices to Plaintiffs for more than his cost. Jacobson knew the amounts stated in the Mesler Roofing and Complete Construction invoices were false. Jacobson also knew that he was only owed the actual cost plus his ten percent profit. The totality of the circumstances shows that the Mesler Roofing and Complete Construction invoices referred to herein were made with the intent to defraud.[26]

---

[25] *In re Young*, 91 F.3d at 1375; *see also 6050 Grant, LLC v. Hanson (In re Hanson)*, 428 B.R. 475, 486 (Bankr. N.D. Ill. 2010) (noting that false pretenses "do not necessarily require overt misrepresentations" but can also include concealment or "failure to disclose pertinent information").

[26] *In re Young*, 91 F.3d at 1375 (totality of circumstances); *see also, e.g.*, *Crossingham Trust v. Baines (In re Baines)*, 337 B.R. 392, 400–01 (Bankr. D.N.M. 2006)

Third, the uncontroverted facts show that Plaintiffs relied on the false representations made to them by Jacobson. Plaintiffs paid the agreed upon rate of cost plus ten percent when the false invoices regarding Mesler Roofing and Complete Construction were presented to them. Plaintiffs relied on the invoices as presented by Jacobson to make their payments under the parties' contract. In addition, regarding the fourth factor, Plaintiffs' reliance on Jacobson's false representations was justifiable. Plaintiffs requested the receipts that formed the basis for the amounts billed for the Mesler Roofing and Complete Construction invoices, and Jacobson purported to provide them. Even without this step, Plaintiffs had no reason to question Jacobson's invoices: the parties had entered into a contract with agreed terms for payment, and Plaintiffs had no reason to suspect that Jacobson was altering invoices before their submission.[27]

Finally, Jacobson's false representations caused Plaintiffs to sustain losses. The actual proposal/contract from Mesler Roofing to Eichus Building was actually $12,995, and the billed invoice from Mesler Roofing to Eichus Building in March 2009 was $13,500. Therefore, for the work performed by Mesler Roofing, Plaintiffs only owed $14,850 ($13,500 cost plus $1350 ten percent profit), rather than the $23,094.50 actually paid. The Plaintiffs, therefore, overpaid for the Mesler Roofing invoice by $8244.50. Similarly, Plaintiffs relied on the Complete Construction invoices provided

---

(false representation made through false invoices shows requisite intent to defraud under § 523(a)(2)(A)).

[27] *Mid-States Millwork, Inc. v. Gering (In re Gering)*, 69 B.R. 686, 693 (Bankr. D. Kan. 1987) (relying on false invoices submitted by defendant was reasonable under the reliance standard of § 523(a)(2)(A)).

-12-

by Jacobson to state the accurate amount due, and paid Eichus Building a total of $86,729.63 for framing ($78,845.12 costs plus $7884.51 ten percent profit). The total amount actually owed from Eichus Building to Complete Construction was only $61,470.12, however. As a result, the amount actually owed by Plaintiffs to Jacobson for framing was $67,617.13 ($61,470.12 cost plus $3147.01 ten percent profit). The Plaintiffs, therefore, overpaid for the Complete Construction invoices by $19,112.50.

Plaintiffs have carried their burden under § 523(a)(2)(A) to except debt from discharge as to the $8,244.50 overpayment for the Mesler Roofing invoice and the $19,112.50 overpayment for the Complete Construction invoices. The motion for summary judgment as to the nondischargeability of these claims is granted.

### D. Nondischargeability under 11 U.S.C. § 523(a)(6)

Subsection 523(a)(6) of title 11, the basis for Plaintiffs' dischargeability claim as to the $8085 corbel destruction, provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt– –
>     . . .
>     (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

The Supreme Court has concluded that this subsection encompasses "only acts done with the actual intent to cause injury."[28]

For this subsection to apply, the debtor must either desire to cause injury or

---

[28] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

-13-

believe the injury is substantially certain to occur.[29] The injury must be both willful and malicious.[30] Under this subsection, therefore, the debtor "must intend the consequences of his actions, not just the actions themselves."[31] Plaintiffs, as the creditors pursuing nondischargeability, also have the burden of proof under § 523(a)(6).[32]

Here, the uncontroverted facts show that Jacobson intended to throw property the Debtors had contracted and paid for—the thirty-three corbels valued at $8085—into a fire. Jacobson intentionally set fire to the corbels, knowing that Plaintiffs had paid for the corbels in full. Jacobson even admitted that he burned the corbels because he was frustrated with Plaintiffs and their dispute with him. Jacobson purposefully acted with intent to destroy property of Plaintiffs, and Plaintiffs suffered the loss of property valued at $8085 as a direct result of Jacobson's willful and malicious injury.[33]

Plaintiffs have carried their burden under § 523(a)(6) to except debt from

---

[29] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004).

[30] *Id.*

[31] *Melquiades v. Hill (In re Hill)*, 390 B.R. 407, 411 (10th Cir. BAP 2008).

[32] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

[33] *See, e.g.*, *McIntyre v. Kavanaugh*, 242 U.S. 138, 141 (1916) (concluding that debt was nondischargeable when a broker deprived a customer of his property by deliberately disposing of it); *State Farm Fire & Cas. Co. v. Edie (In re Edie)*, 314 B.R. 6, 17 (Bankr. D. Utah 2004) (discussing destruction of property by fire cases under § 523(a)(6) and concluding that where the defendant intended to cause injury to property by fire, then willful and malicious intent to injure is proven under § 523(a)(6)).

-14-

discharge as to the $8085 corbel destruction. The motion for summary judgment as to the nondischargeability of this claim is granted.

## III. Conclusion

There are no genuine issues of material fact regarding the events set forth above. Based on the foregoing analysis, the Court finds that the debt owed to Plaintiffs by Defendant Jacobson is a nondischargeable debt under §§ 523(a)(2)(A) and (a)(6). The Court grants the Plaintiffs' motion for summary judgment,[34] and enters judgment in favor of Plaintiffs Brett and Patricia Bartley for $35,442 (consisting of $8244.50 for the Mesler Roofing invoice and $19,112.50 for the Complete Construction invoices for false representations under § 523(a)(2)(A), and $8085 for the destruction of the corbels under § 523(a)(6)).

**It is so ordered.**

# # #

---

[34] Doc. 31.